Achille O. Van Suetendael and Elizabeth P. Van Suetendael v. Commissioner. Achille O. Van Suetendael v. Commissioner.
Van Suetendael v. Commissioner
Docket Nos. 107681, 109703, 108929.
United States Tax Court
1944 Tax Ct. Memo LEXIS 108; 3 T.C.M. (CCH) 987; September 25, 1944
*108 William A. Walsh, Jr., Esq., for the petitioners. Francis S. Gettle, Esq., for the respondent. HARRON Memorandum Findings of Fact and Opinion HARRON, Judge: The respondent determined deficiencies in income tax against the petitioners for the years 1936 to 1938, inclusive, as follows: Docket
Year
No.
Petitioner
Amount
1936
107681
Achille O. Van Sueten-
dael
$5,499.59
Elizabeth P. Van Sueten-
dael
1937
108929
Achille O. Van Sueten-
dael
2,993.86
1938
109703
Achille O. Van Sueten-
dael
$1,380.06
Elizabeth P. Van Sueten-
dael The proceedings were consolidated. Not all of the adjustments are in dispute. Petitioners have conceded certain adjustments made by the respondent and the respondent has agreed that petitioners are entitled to certain deductions claimed by them on their returns but disallowed in the notice of deficiency. The only issue for determination is whether securities sold by petitioner, Achille O. Van Suetendael, during the taxable years were capital assets under section 117 (b) of the Revenue Act of 1936 and section 117 (a) (1) of the Revenue Act of 1938, and, therefore, subject to the limitations upon gain and loss set forth *109 in section 117. Petitioners filed joint returns for the years 1936 and 1938, and separate returns for the year 1937. These returns were filed with the collector for the fourteenth district of New York. Findings of Fact The petitioners are husband and wife, and reside in Yonkers, New York. The husband, who will be referred to hereinafter as the petitioner, kept his books and filed his returns on the cash receipts and disbursements basis. During the taxable years, and for some years prior thereto, the petitioner was primarily engaged in buying and selling securities. Approximately 90 percent of the securities purchased by him were interest-bearing bonds and the other 10 percent consisted of preferred and common stock. His income was derived principally from interest on the bonds purchased and from interest on bank deposits. He maintained an office in Yonkers and had one employee who acted as his secretary-typist and general assistant. He was not a member of any stock exchange. His name was listed in several statistical financial publications as a dealer in securities, and in the Yonkers city and telephone directories under the classification of "investments". He also listed offerings *110 to buy or sell securities at a certain price in the National Daily Quotation Service, for which he paid an annual subscription fee. This service was circularized among investment and trading houses in the United States. Petitioner has registered with the Securities and Exchange Commission, the State of New York, and the Bureau of Internal Revenue as a broker or dealer in securities. From time to time he has advertised in a Yonkers newspaper offering to buy or sell certain securities. Occasionally, his name appeared in the advertising section of the Columbia Aluminl News under the caption "Investment Securities". He has also written to individuals, banks, and insurance companies offering securities at stated prices. Over a period of years, he has occasionally distributed calendars and pocket manuals containing data on securities of companies listed on the leading stock exchanges. Prior to the taxable years, petitioner, to a small degree, had participated in selling groups for the purpose of distributing new issues of securities. The record of the securities purchased by petitioner was kept in a single card file which he called an inventory. Each security purchased was listed upon *111 a separate card which contained the name of the security, the cost, and statistical data concerning the security. During the taxable years, petitioner maintained separate accounts with Eastman, Dillon & Company, Ira Haupt & Company, and Chisholm & Chapman, all of whom were brokers, having membership on the New York Stock Exchange and the New York Curb Exchange. The great proportion of the securities sold by the petitioner during these years were sold to or through Eastman, Dillon & Company and Ira Haupt & Company. Excluding sales to petitioner's wife and son, approximately 77 percent of petitioner's total sales in these years were made to or through Eastman, Dillon & Company and Ira Haupt & Company. Some of the securities purchased by petitioner from these brokers were kept by them for petitioner. Many of the specific securities sold to or through Eastman, Dillon & Company and Ira Haupt & Company had been previously purchased by petitioner from these same brokers. The following table shows the total number of sales made by petitioner in each year, excluding sales made by him to his wife, the number of sales made to or through Eastman, Dillon & Company and Ira Haupt & Company, and *112 the number of these sales in which petitioner had previously acquired the security sold from Eastman, Dillon & Company and Ira Haupt & Company. A
B
C
D
E
F
G
H
Sales in
Sales in
which the
which
specific
the specific
security
security
sold
sold
through
through
Eastman-
Ira Haupt
Dillon Co.
Co. had
had been
been pur-
purchased
chased
Sales to
previously
Sales
previously
Total
Eastman-
through
to Ira
through
No. of
Dillon &
Eastman-
% of
Haupt
Ira Haupt
% of
Year
Sales
Co.
Dillon Co.
D to C
& Co.
Co.
G to F
1936
380
273
256
94%
30
22
73%
1937
230
108
99
92%
32
22
70%
1938
440
287
No record of
81
No record of
petitioner's
petitioner's
vendor
vendor
The following table for the years 1936 and 1937 shows the period of holding by petitioner of the securities bought from and sold to or through Eastman, Dillon & Company and Ira Haupt & Company: No. of
Sold on Same
Year
Account
Transactions
Day Acquired
Held One Day
Held Two Days
1936
Eastman, Dillon & Co.
256
4
10
5
1936
Ira Haupt & Co.
22
1937
Eastman, Dillon & Co.
99
2
2
1
1937
Ira Haupt & Co.
22
*113 Held More Than
Held More Than
Held More Than
Held More Than
Two Days But
One Week But
Two Weeks But
One Month
Not More Than
Not More Than
Not More Than
Not More Than
Year
One Week
Two Weeks
One MOnth
Two Months
1936
23
18
38
27
1936
1
1
6
1937
5
6
16
9
1937
1
3
Held More Than
Held More Than
Held More Than
Two Months But
Three Months
Six Months But
Not More Than
But Not More
Not More Than
Held More Than
Year
Three Months
Than Six Months
One Year
One Year
1936
33
35
37
26
1936
2
8
4
1937
8
15
24
11
1937
4
12
2
For the year 1938, there are exhibits which show the record of securities sold by petitioner to Eastman, Dillon & Company and to Ira Haupt & Company, but these exhibits do not show the name of the vendor of each security from whom petitioner made each purchase. Most of the securities purchased from petitioner by Eastman, Dillon & Company and Ira Haupt & Company were purchased by them as brokers for their customers. Where they acted in such capacity, they charged petitioner a commission. When they purchased for their own account, there was no commission charged. The record does *114 not show the charge for commissions in 1936 and 1937. However, of the total sales of $282,347 made by petitioner to Eastman, Dillon & Company in 1938, only the amount, of $68,137.25 (24 percent of the total sales) was made without a charge for commissions. Of the total sales of $69,296.75 made by petitioner to Ira Haupt & Company in 1938, only the amount of $15,163.50 (22 percent of the total sales) was made without a charge for commissions. No sales were made in 1938 to Chisholm & Chapman free of a charge for commission. The following tables show the number of sales in 1936, 1937, and 1938, with the total profit and loss on the sales, and the period of holding with respect to the losses. 1936
No. of
Selling
Sales
Cost
Price
Profit
Loss
Eastman, Dillon & Co.
273
$459,991.25
$467,695.13
$18,772.99
$11,069.11
Ira Haupt & Co.
30
109,824.38
112,800.63
3,035.00
58.75
Chisholm & Chapman
12
19,507.85
10,063.25
1,137.00
10,581.60
Others
65
115,688.33
108,415.61
6,814.50
14,087.22
Totals
380
$705,011.81
$698,974.62
$29,759.49
$35,796.68
Analysis of 1936 Loss
Period of Holding
One year or less
$ 1,513.26
More than one, not more than two years
1,623.75
More than two, not more than five years
More than five, not more than ten years
32,078.68
More than ten years
580.99
Totals
$35,796.68
*115 1937
No. of
Selling
Sales
Cost
Price
Profit
Loss
Eastman, Dillon & Co.
108
$199,629.40
$190,585.60
$ 4,528.86
$13,572.66
Ira Haupt & Co.
32
50,787.10
46,732.86
928.09
4,982.33
Chisholm & Chapman
7
15,032.50
17,087.41
2,054.91
E. P. Van Suetendael
40
130,267.50
131,262.50
995.00
Others
83
243,678.40
234,444.51
9,872.03
19,105.92
Totals
270
$639,394.90
$620,112.88
$18,378.89
$37,660.91
Analysis of 1937 Loss
Period of Holding
One year or less
$15,791.35
More than one, not more than two years
5,766.94
More than two, not more than five years
6.28
More than five, not more than ten years
8,329.17
More than ten years
7,767.17
Totals
$37,660.91
1938
Loss - (Gain)
No. of
Short-
18 to 24
Over 24
Broker
Sales
Cost
Sales
Term
Months
Months
Eastman, Dillon & Co.
287
$299,749.83
$282,347.00
$1,439.58
$7,113.75
$ 8,849.50
Ira Haupt & Co.
81
74,119.39
69,296.75
2,925.14
1,593.75
303.75
Chisholm & Chapman
17
14,190.15
12,223.90
(583.72)
2,549.97
Miscellaneous
55
111,366.73
113,676.88
(3,340.84)
1,030.69
Totals
440
$499,426.10
$477,544.53
$ 440.16
$8,707.50
$12,733.91
Limited to 66 2/3%
$5,805.00
Limited to 50%
$ 6,366.95
*116 In the above tables, the words "others" and "miscellaneous" include a number of brokers or members of stock exchanges, recognized dealers in securities, and a few individuals or firms who were not in those categories. In 1936, there were fourteen such individuals or firms and in 1937, there were twenty-four. There is no record for 1938. Sales to petitioner's wife in 1937 amounted to $131,262.50, with a profit of $995. During the taxable year 1938, petitioner made twenty-eight separate sales, amounting to $85,467.50, to his wife, on which no gain or loss was realized. During the same year, petitioner made eleven sales, amounting to $31,502.50, to his son, Peter T. Van Suetendael, on which no gain or loss was realized. Petitioner's income tax returns show the following sources of income and losses: 1936
1937
1938
Fees, salary, etc.
[1] $ 265.00
[2] $ 1,140.00
Interest on bank deposits, notes, etc.
7,982.45
$ 7,747.77
10,791.76
Interest on tax-free covenant bonds
25,012.00
17,020.25
Interest on bonds
10,099.98
31,683.25
Dividends
603.34
1,054.49
786.97
Interest on Government obligations
40.00
Rent
Loss - (61.99)
950.29
Other income
2,700.00
Short-term gain
[3] 49.99
Long-term gain
[3] 753.75
Loss on sale of securities
(25,233.33)
(25,217.61)
(28,664.82)
*117 The petitioner reported in his income tax returns for the taxable years losses from the operation of his business computed as follows: 1936
1937
1938
Net cost of goods sold
$708,983.78
$641,766.30
$614,627.25
Total receipts
698,721.05
622,480.97
591,417.84
Loss
10,262.73
19,285.33
23,209.41
Deductions for salary, interest, rent, etc.
14,970.60
5,932.28
5,455.41
Total loss shown on returns
$ 25,233.33
$ 25,217.61
$ 28,664.82
In reporting the transactions of the sales of securities in each year on his return, petitioner took the view that all of the securities sold were non-capital assets, so that he computed the result of all the transactions in each year simply by taking the total cost of the securities and the total receipts from sales. Under this method of reporting his transactions, petitioner showed a net loss for each year. Petitioner, on his *118 returns, did not break down all of the transactions in each year, to separate the sales at a profit from the sales at a loss. Also, he did not break down his transactions to show the period of holding in each instance. Such break-downs have been shown in the above tables. The respondent, in determining the deficiencies, held that the securities sold by petitioner were capital assets, and he therefore applied the limitations of section 117 in computing petitioner's net income from the sale of such securities. He disallowed the total amount of losses reported in each year from sales of securities and determined that petitioner realized a net capital gain of $11,911.34 for 1936, a net capital loss of $2,000 for 1937, and a short-term loss of $49.99 and a long-term loss of $12,171.95 for 1938. The securities which the petitioner sold during the taxable years were capital assets and did not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. Opinion
*119 In this proceeding, as well as in a former proceeding before the Board of Tax Appeals involving prior taxable years, the petitioner has attempted to show that he was recognized in the security trade as a dealer in securities. He has placed great emphasis on the fact that he had registered with the Securities and Exchange Commission and the State of New York as a security dealer. Similarly, he has pointed to advertisements placed by him in newspapers, bulletins, and pamphlets indicating that he dealt in securities during the taxable years. On brief, he argues that the entire case resolves itself to the one question of whether he was engaged in business as a dealer in securities. That, however, is not the issue. The phrase "dealer in securities" is not defined in the statute, although it is defined in the Regulations. Regulations 94, Article 22 (c)-5. The only issue for determination here is whether the securities sold by petitioner during the taxable years were capital assets under section 117 (b) of the Revenue Act of 1936 [1] and section 117 (a) (1) of the Revenue Act of 1938. [2] For the purpose of this proceeding both sections of the Act are substantially identical. *120 Under the cited sections of the Revenue Acts, all property is to be treated as capital assets unless the taxpayer is able to bring himself within one of the stated exceptions in the definition of capital assets. As far as this proceeding is concerned, the only possible exceptions which petitioner could rely upon are that the securities sold were "stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business". The securities which petitioner sold during the taxable years cannot be classified as stock in trade or property subject to inventory in his hands unless they were held by him primarily for sale to customers in the ordinary course of his business. Thus, the issue turns upon whether or not the securities sold by petitioner during during the taxable years were held by him primarily for sale to customers in the ordinary course of business. This is probably the reason why petitioner has placed such stress upon the contention that he was a dealer in securities *121 since securities in the nature of stock in trade held primarily for sale to customers are held only by dealers in securities. See . However, there may be many sales of securities by so-called dealers in securities which do not come within the exceptions set forth in the definition of capital assets. The fact that petitioner had a teletype machine, four telephones and statistical financial publications in his office, was listed as a "dealer" in certain publications, and advertised himself as willing to buy or sell securities is not determinative of the issue. The subject matter of the cited sections is property and it must be shown that the property itself comes within the exceptions stated in the definition of capital assets. The respondent has determined that the securities sold by the petitioner during the taxable years were not held by him primarily for sale to customers in the ordinary course of his business. The burden of proving otherwise is upon petitioner. The question is predominantly one of fact. The petitioner did not testify at the hearing. However, his file of cards upon which was recorded each *122 security purchased and sold by him was introduced in evidence. From these cards, respondent prepared summaries of the transactions during the taxable years. Petitioner does not contend that the transactions as set forth in the summaries are in any way incorrect, nor has he filed any schedules based upon those transactions, although he has had full opportunity to do so. For the taxable years 1936 and 1937, the schedules prepared by respondent list the name of each security sold, the date acquired, the date sold, the cost, selling price, profit or loss, interest paid or received, and the name of the vendor from whom the security was purchased by petitioner, as well as the vendee to whom petitioner sold the security. The schedules for these years, however, do not show the number of transactions in which petitioner was charged a selling commission by Eastman, Dillon & Company and Ira Haupt & Company on securities sold to or through them. This information is shown in the schedules for 1938, but the name of the vendor from whom petitioner purchased the securities sold through Eastman, Dillon & Company and Ira Haupt & Company is not shown. For this reason, the findings of fact do not show *123 the complete facts for all of the taxable years. However, they do reveal a fairly complete picture of the manner in which petitioner bought and sold securities during these years. From an analysis of the schedules showing all of petitioner's transactions in securities during these years, we cannot find as a fact that petitioner held the securities sold by him during the taxable years primarily for sale to customers in the ordinary course of his business. The facts are just as consonant with the theory that petitioner held the securities for speculation or for investment. It is well established that taxpayers who buy securities for speculation or investment hold them as capital assets and not primarily for resale to customers. ; , affirmed on point considered here, ; , certiorari denied, . One who holds securities *124 in the nature of stock in trade primarily for resale to customers is regularly engaged in the purchase of securities at wholesale. He is a middleman in distributing the securities and he does not resell to the same class of persons from whom he buys. Here, petitioner did not make wholesale purchases of securities. The securities purchased were in relatively small quantities and were diversified. In this respect, he acted no differently from an ordinary purchaser. Most of the securities purchased by petitioner were resold to or through the same brokers from whom they were bought. Here again, petitioner acted in the same manner as an ordinary purchaser having an account with a broker. Approximately 77 percent of all the securities sold by petitioner during the taxable years, excluding those sold to his wife and son, were sold to or through Eastman, Dillon & Company and Ira Haupt & Company. In most of these transactions, the companies acted as brokers and did not purchase the securities as principals for their own account. These brokers or their clients *125 cannot be considered as petitioner's customers. ;;Over 92 percent of the securities sold by petitioner to or through Eastman, Dillon & Company and Ira Haupt & Company had been previously acquired by him from the same two brokerage houses. Many of these securities were resold by petitioner at a profit on the same day in which he purchased them or a short time thereafter. Obviously, in those cases, he never actually received the securities since the brokers who purchased and sold them for him were the same. The result of those transactions was that petitioner merely received or was credited with the profit. In this respect, his operations were similar to a trader purchasing securities on margin. Petitioner could not have intended to purchase these securities for resale to "customers" as that word is used in the statute. Some of the securities purchased through the two brokerage houses were not delivered to petitioner, but were kept by the brokers. It may be that they were retained as *126 collateral for loans, which would be another indication that petitioner was purchasing and holding the securities for speculation. Our analysis of these schedules, together with the record as a whole, warrants the conclusion that the securities purchased by petitioner were not held as stock in trade primarily for resale to customers. Although petitioner did make efforts to sell some of the securities through channels other than brokers and dealers, and actually did sell a small amount of the securities to other parties, we cannot find even as to those securities that they were purchased primarily for resale to customers. A mere statement in behalf of petitioner that they were purchased or held for that purpose is insufficient. We think that the purchases and sales of all of the securities were engendered by the speculative advantage which might be derived by petitioner, or the income which he might receive therefrom. Respondent points out that during the taxable years, petitioner's principal source of income was derived from interest on the bonds owned by him and that the great proportion of his losses *127 resulted from securities which he had held for a long period of time. He argues that petitioner, during each of the taxable years, selected securities which he had held for a long time and which were then unprofitable to him and disposed of those securities at the best possible price to anyone who would buy them in order that the loss sustained thereon should offset his income from the interest-bearing bonds held by him. The facts indicate that petitioner received interest on bonds in 1936 in the amount of $25,012; in 1937 in the amount of $27,120.23; and in 1938 in the amount of $31,683.25. During the same period petitioner reported on his income tax returns, business losses in substantially the same amounts. The facts also show that in 1936, of the total losses of $35,796.68 sustained by petitioner from the sale of securities, $32,659.67 was sustained on securities held by him for more than five years. In 1937, of the total losses of $37,660.91 sustained by petitioner, $16,096.34 was sustained from securities held more than five years. In 1938, of the total losses of $25,806.13 sustained by petitioner, the amount of $21,441.41 was a long-term loss sustained on securities held for *128 more than 18 months. Respondent also argues that as to the securities held for a long period, petitioner did not hold them for resale to customers, but for the income which he might derive therefrom. The facts apparently support respondent's contentions. Respondent also states in his brief that in all of the years since 1929, petitioner has reported substantial income from interest and dividends, yet, in all of these years, his sales of securities have resulted in substantial annual losses which were offset against his income. There appears to be ground for this statement. See Achille O. Van Suetendael, B.T.A. Memorandum Opinion, Docket No. 95739, May 21, 1940. Petitioner has placed considerable reliance upon . The facts of that case, however, are not shown in the opinion and the court merely affirmed the decision of the district court, which had found that the securities sold were held by the taxpayer for resale to customers in the ordinary course of business. The facts in the district court decision are not reported. . *129 A careful study of the whole record, including all of the exhibits in evidence, convinces us that petitioner has not sustained the burden of proof imposed upon him of showing that the securities sold during the taxable years were held by him Primarily for sale to customers in the ordinary course of his business. The proof is just as susceptible of a construction that some of the securities were acquired and held by petitioner for speculation and some for investment. We think that a reasonable conclusion from all of the facts is that petitioner intended to sell the securities in any way he could and to any purchaser regardless of whether or not the purchaser could be deemed a "customer" within the meaning of the statute. It is therefore held that the securities sold by petitioner during the taxable years were capital assets and subject to the limitations of gain and loss set forth in sections 117 of the Revenue Acts of 1936 and 1938. Respondent's determination is sustained. Respondent has conceded that petitioners are entitled to certain deductions which were disallowed in the notice of deficiency. Accordingly, Decision will be entered under Rule 50. Footnotes
1. Fees for appraisals. ↩
2. Fees for services received from Westchester Service Corporation, Yonkers, New York. ↩
3. A joint income tax return was filed for the year 1938 by petitioner and his wife. The short-term gains and the long-term gains, shown above, were on securities owned by petitioner's wife.↩
1. SEC. 117. CAPITAL GAINS AND LOSSES. (b) Definition of Capital Assets. - For the purposes of this title, "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business. ↩
2. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this title - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1);↩